Vernon Sharp, Jr. v. Commissioner.
Sharp v. Commissioner
Docket No. 26604.
United States Tax Court
1952 Tax Ct. Memo LEXIS 319; 11 T.C.M. (CCH) 143; T.C.M. (RIA) 52047; February 19, 1952
*319 On August 1, 1946, petitioner conveyed in trust for the benefit of his wife and four children voting trust certificates which represented 800 shares of the common stock of Springfield Woolen Mills Company, a Tennessee corporation. In his gift tax return for 1946, petitioner valued the stock at $45 per share and paid gift tax thereon. The Commissioner has determined that the stock had a fair market value on the date of gift of $95 per share and has determined a deficiency in petitioner's gift tax based on such valuation. Held, the stock had a fair market value on August 1, 1946, the date of gift, of $55 per share. Lawrence B. Howard, Esq., 700 American Trust Bldg., Nashville, Tenn., for the petitioner. Frederick T. Carney, Esq., and S. Earl Heilman, Esq., for the respondent. BLACK Memorandum *320 Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's gift tax for the year 1946 of $4,027.50. The deficiency is due to one adjustment which the Commissioner has made to the net gifts disclosed on the gift tax return which petitioner filed for the year 1946. That adjustment was: "Add: Stocks - Schedule A of return Item 1 $40,000.00." That adjustment is explained in the deficiency notice as follows: "The 800 shares of common stock of Springfield Woolen Mills, Springfield, Tennessee, returned at $45.00 per share has been determined to have had a fair market value of $95.00 per share on the date of the gift - August 1, 1946." The petitioner by an appropriate assignment of error contests the correctness of respondent's determination. Findings of Fact Petitioner resides at Brentwood, Tennessee, and filed his gift tax return for the year 1946 with the Collector for the District of Tennessee at Nashville, Tennessee. On August 1, 1946, petitioner made a gift of voting trust certificates representing 800 shares of common stock of Springfield Woolen Mills Company, Springfield, Tennessee, to the Third National Bank in Nashville, as trustee, under *321 a trust to hold the stock for the benefit of petitioner's wife and four children. Petitioner in the gift tax return which he filed for the year 1946, valued this stock at $45 per share, or a total of $36,000. The Commissioner in his determination of the deficiency has increased this valuation to $95 per share as explained in his deficiency notice. Most of the production of the mill consisted of high quality woolen blankets which carried the brand name "Springfield." It also produced woolen fabrics used in making women's clothing. Such fabrics were manufactured on contract and were not kept in stock; they did not carry the Springfield label. The percentage of production of blankets and fabrics varied from year to year according to demand. In 1946, fabric production accounted for $2,900,000 of total sales of $4,200,000, or approximately 69 per cent thereof. The mill had been principally engaged in manufacturing woolen blankets for the armed forces during the years 1941-1945. Profits in those years were good, and the company greatly improved its plant and facilities and modernized its machinery. On August 1, 1946, Springfield Woolen Mills owned 93.55 per cent of the common stock and *322 96.345 per cent of the preferred stock of Bransford Realty Company. On December 31, 1946, the total net worth of Bransford Realty Company was $412,550.23. It was liquidated in 1949, and Springfield Woolen Mills made a profit of about $200,000 on its investment. Offset against this asset was an undisclosed tax liability of approximately $112,000. Final profit in the liquidation was approximately $80,000. These assets and liabilities were not revealed on the balance sheets of Springfield Woolen Mills. There were 15,786 shares of common stock of Springfield Woolen Mills outstanding in 1946, and the number of separate stockholders was in excess of 50. Petitioner owned 2,884 shares and was a member of a voting trust consisting of 12 members from five families. The voting trust controlled the majority of the stock of the company. A controlling interest in Springfield Woolen Mills was purchased by a local group of Nashville businessmen on or about the year 1940, and this group, of which petitioner is one of the leading figures, has since been in control of the mill. The earnings of the company had not been substantial during the preceding five years, but after the new group came in during *323 the years 1940 and 1941, the company earned between $2.00 and $3.00 per share, and, thereafter, in 1942 through 1946, it had quite substantial earnings per share. Average net earnings during the five years preceding the gift, that is to say from January 1, 1941 to January 1, 1946, inclusive were $11.06 per share. Dividends paid by the company averaged $1.75 per share for the period 1940-1946. Disregarding a splitup of the stock, in 1947 the dividend was $0.80; 1948, $1.75; 1949, $200; and 1950, $3.00 per share. The book value of the stock at the end of 1945 was $55.16; 1946, $80.92; and 1947, $77.54. At the beginning of the year 1946, the outlook for woolen goods was very good and all woolen companies were running on a profitable basis, the production of woolen goods having been curtailed during the war years. This profitable basis continued throughout most of the year 1946, but on August 1, 1946, at the time of the gift, it was possible to foresee, to a slight extent at least, the impending end of the boom in the woolen business, but the intensity and severity of the decline which occurred in the year 1947 could not be anticipated at that time. The earnings in this type of business *324 largely accrue in the last two quarters of the year and on August 1st of any year it is not generally possible to foretell with any reasonable accuracy the earnings of this type of woolen business for the year. Actually, during the year 1946, Springfield Woolen Mills had a very profitable operation netting $27.80 per share, the largest earnings of any year in its history, but the extent of these profits could not be determined at the time of the gift. During the following year 1947, Springfield Woolen Mills lost $12.18 a share. There were several stock sales of Springfield Woolen Mills during the year 1946. On March 6, 1946, the National Securities Company of Rome, Georgia, sold 100 shares for $22.50 per share; on June 12, 1946, Springfield Woolen Mills sold to three of its employees 100 shares each of treasury stock at $27.50 per share (none of these employees had previously owned any stock); and on September 10, 1946, Merrill Lynch, Pierce, Fenner & Beane, through their New York office, sold 150 shares at $33 per share. It clearly appears that there was no quoted market for the stock, no bid and asked prices, and that such sales as occurred were not sufficient to conclusively *325 determine the fair market value but were helpful in making such determination. It further appears that while petitioner was one of the group who owned these shares of stock which constituted the controlling interest in the Springfield Woolen Mills, nevertheless, the shares placed in the trust and the subject of the gift did not have any unique or special value on account of their relation to the control of the company. On or about August 10, 1946, George Gale, one of the stockholders of Springfield Woolen Mills, died and at the time of his death he owned 100 shares of stock of Springfield Woolen Mills and his estate was such that no Federal income taxes were due, but there was a state tax due. These shares of stock were reported for inheritance tax purposes to the State of Tennessee as of August 10, 1946, as having a value of $35 per share. The Court finds as a fact that the fair market value of the shares of stock of Springfield Woolen Mills Company which were the subject of the gift in this proceeding, was on August 1, 1946, $55 per share. Opinion BLACK, Judge: The only issue in this proceeding is the value per share of the 800 shares of Springfield Woolen Mills Company common *326 stock which petitioner gave in trust to his wife and four children on August 1, 1946. The question of value is, of course, one of fact. Section 86.19 of Treasury Regulations 108 relating to the gift tax reads in pertinent part as follows: "Sec. 86.19. Valuation of Property. - (a) General. - The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The value of a particular kind of property is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the time of the gift should be considered." The petitioner returned the value of the gifts on his gift tax return at $45 per share. Petitioner in his testimony stated that prior to the *327 date of filing his gift tax return on March 15, 1947, he made an investigation of the sales of Springfield Woolen Mills Company stock which had been made in 1946 and that he found that sales had been made as follows: On March 9, 1946, the National Securities Company of Rome, Georgia, sold 100 shares for $22.50 per share; on June 12, 1946, Springfield Woolen Mills sold to three of its employees 100 shares each of treasury stock at $27.50 per share; and on September 10, 1946, Merrill Lynch, Pierce, Fenner & Beane sold 150 shares at $33 per share. The petitioner, after detailing these sales, was asked the following question by his counsel: "Q. Now, what conclusion did you come to as to the value you should declare for tax purposes on your eight hundred shares of Stock? "A. After discussing the matter of valuation with the Trust Office, Mr. Fleming, who is now President of the Bank, and our Auditor, I decided to declare the stock at the value of $45 per share, even though no one of the three had suggested a declaration of an amount in excess of $35 a share. If, in arriving at our valuation in the instant case, we should take into consideration only the actual sales which were made *328 of stock in Springfield Woolen Mills during any time in the year of the gift, we would conclude that the fair market value of the stock was not in excess of the value which petitioner has placed upon it in his gift tax return. But the corporation's shares were not listed on any exchange and apparently there was no, what might be termed, "over-the-counter market." Therefore, while evidence as to the sales which were actually made was relevant and is helpful in aiding us to arrive at our conclusions as to value, it is not conclusive. Other factors have to be taken into consideration such, for example, as book value of assets, quality of management of the enterprise, its favorable location, and things of that sort. After taking all factors which we deem pertinent into consideration we have arrived at the conclusion that the fair market value of the stock $55was per share on August 1, 1946, the date of the gifts, and we have so found in our Findings of Fact. That figure will be used in a recomputation under Rule 50. Decision will be entered under Rule 50.